Jesse W. ELMORE, Appellee,

v.

UNITED STATES of America, Appellant.

No. 72–1280.

United States Court of Appeals, Fourth Circuit.

Argued Aug. 28, 1972.

Decided Sept. 13, 1972.

Stanton R. Koppel, Atty., Dept. of Justice (L. Patrick Gray, III, Asst. Atty. Gen., Walter H. Fleischer, Atty., Dept. of Justice, and Leigh B. Hanes, Jr., U. S. Atty., on brief), for appellant.

Leroy Moran, Roanoke, Va., for appellee.

Before HAYNSWORTH, Chief Judge, and CRAVEN and RUSSELL, Circuit Judges.

PER CURIAM:

The plaintiff, a contract carrier for the Postal Service, seeks to recover the value of twenty-three long guns which the Government had withheld from his compensation, because of the loss of such guns while in the Postal Service. The District Court charged the contract carrier with the value of four such guns, which were conclusively shown to have reached the parcel post annex in Roanoke, Virginia, by notices sent to the Police Department of Roanoke, but he declined to charge the contract carrier with the value of the other guns. In doing so, he placed a higher standard of proof upon the United States than was permissible.

The testimony showed an unusual number of losses of long guns (rifles and shotguns) moving through the mails to addressees in the area of Roanoke, Virginia, where the plaintiff, Elmore, had certain contracts for the carriage of mail and parcel post, including moving all mail and parcel post from the railroad station to the main post office and from the main post office to the parcel post annex.

In the course of investigation, a long gun in a package bearing the clear, bold "FIREARM" label, required by postal regulations, was placed in the mails addressed to an addressee in the Roanoke area. In its stock there had been inserted a short range radio transmitter, so that its location could be followed and observed. Carlton D. Traynham, one of Elmore's drivers, was seen to pick up the parcel and later to load it onto his truck. Instead of unloading it at the parcel post annex, however, he left it in his truck and later drove to his home, where he placed the parcel containing the gun beneath an oil tank.

After securing search warrants, officers went to the house and seized the parcel containing the gun and radio

transmitter. In the trunk of Traynham's car, they also discovered and seized another gun which earlier had been lost or stolen from the mails.

Thereafter the Government deducted from Elmore's compensation the value of twenty-three guns, not including the two which had been recovered from Traynham, which had been lost or stolen from the mails while in the course of delivery to Roanoke addressees. Of those twenty-three guns, four had reached the parcel post annex, for one of the supervisors there had notified the Roanoke Police Department of the receipt of each of those four guns. The other nineteen guns apparently never reached the parcel post annex, as, indeed, the test gun containing the radio transmitter did not. The District Judge thus charged Elmore with the value of four guns affirmatively shown to have actually reached the parcel post annex in Roanoke, but concluded that the Government had failed to prove that the remaining nineteen guns had reached the Roanoke area. In this latter conclusion, we think that he was mistaken.

■ The regularity of the mails is such that proof of mailing is *prima facie* proof of receipt by the addressee, but the permissible inferences become limited when a breakdown in the Postal Service is shown with respect to a particular class or classes of items. Then, the general deduction prevails that items within the indicated class, or classes, reached the carrier or the area in which the particular breakdown is shown to have occurred but were lost there if undelivered to the ultimate addressee. This was the explicit holding of Boerner v. United States, 2 Cir., 117 F.2d 387. See, also Pasadena Research Laboratories v. United States, 9 Cir., 169 F.2d 375.

The District Judge recognized that the proof here made out a *prima facie* case of receipt by Traynham. He declined to apply it against Elmore "be-

cause nowhere is bad faith charged against the Elmores."

■ It is true that no one charged the Elmores with bad faith or wrongdoing. Their only fault was ineffective supervision of their employees, particularly Traynham, but the law makes a contract carrier responsible for losses due to the neglect of his agents and his employees.[1] Though the Elmores, themselves, be subject to no moral censorship, they are as responsible for losses as a thieving employee of theirs who actually causes it. It simply was in irrelevance to observe that the Elmores were not charged with bad faith or affirmative wrongdoing.

■ The Government's proof here was ample to show that each of the nineteen guns came into the possession of Elmore's employees.[2] Proof that unusual losses of guns were being sustained in the Roanoke area, not elsewhere in Virginia, coupled with the observed fact of Traynham's theft of one gun and his possession of another stolen gun, in combination, was ample to make out a *prima facie* case that each of the guns reached Elmore, who had the exclusive contract of carriage of parcel post from the railroad station to the main post office and from the main post office to the parcel post annex.

The proof, of course, only made out a *prima facie* case, which should prevail only if unrebutted. Elmore, with Traynham's assistance, attempted to rebut it. Trayham testified that he did not steal any one of the twenty-three guns. He denied that he had stolen the gun found in the trunk of his car, claiming that it had been given him by a friend, unfortunately, recently deceased. He was on the point of denying that he had stolen the test gun with the radio transmitter, when reminded that he had entered a plea of guilty to its theft.

The situation created a case for the factfinder. The *prima facie* case should

---

1. 39 U.S.C.A. § 6434; *see, also,* 39 C.F.R. 522.4(a).

2. We are not concerned with the four guns found by the District Judge to have been stolen by Traynham.

prevail, unless Elmore's attempt to rebut it through Traynham's testimony was believed. We need not remand for further findings, however, because the District Judge plainly stated his disbelief of Traynham. He arrived at his conclusion, not by findings that some of the guns were lost or stolen while in the possession of others than Elmore, but simply by a failure to recognize that a *prima facie* case had been made out with respect to the nineteen guns, as well as with respect to the four which were affirmatively shown to have reached the parcel post annex in Roanoke, Virginia.

Under these circumstances, there is no unresolved factual issue and we may simply direct the entry of judgment for the United States.

Reversed.