328 S.E.2d 180

**STATE of West Virginia**

v.

**Robert NICHOLSON.**

**No. 16059.**

Supreme Court of Appeals of West Virginia.

March 22, 1985.

George P. Stanton, III, and John Ernest Shank, Asst. Attys. Gen., Charleston, for appellee.

William H. Martin, Charles Town, for appellant.

NEELY, Chief Justice:

The appellant, Robert Nicholson, was convicted of welfare fraud under *W.Va. Code* 9-5-4 [1972]. He maintains that he did not waive his right to counsel and therefore a statement he gave to a Department of Human Services employee and a West Virginia state trooper should not have been admitted at his trial. Although this Court holds that the appellant's waiver and statement were properly admitted by the trial court, we remand this case for sentencing.

In June of 1981, Miss Frances Lantz, an investigator with the Jefferson County Department of Human Services was asked by the Department to review the file of the appellant, Robert Nicholson. After a thorough investigation, Miss Lantz concluded that the appellant had received over six thousand dollars more in food stamps from the Jefferson County welfare office than was his entitlement from March 1979 through the initiation of her investigation. As Miss Lantz testified subsequently, Mr. Nicholson reported an income of just under $15,000 for the two-year period although in fact his actual earnings were over three times that amount.

On 6 January 1982 West Virginia State Trooper W.O. Plantz and Miss Lantz appeared at Paul's Wood Products Company, near Charles Town, West Virginia. They asked the appellant to accompany them to the Charles Town Detachment of the West Virginia Department of Public Safety for

questioning. Mr. Nicholson agreed to be questioned and the three set off together.

The appellant, who was no stranger to the police, agreed to speak to Trooper Plantz and investigator Lantz. Waiving his right to have a lawyer present during his interrogation, he signed a West Virginia Department of Public Safety form acknowledging that his constitutional rights had been explained to him. The appellant also signed a statement, written in longhand by Trooper Plantz and meticulously read to the appellant before he signed it. Mr. Nicholson's testimony and the record are barren of any suggestion that the appellant was coerced or intimidated in any way to offer this statement.

Mr. Nicholson was tried in February 1983 on five counts of welfare fraud. The jury found him guilty of three of these five counts. The appellant did not report almost $31,000 of income earned by various members of his household during the two-year period while at the same time receiving food stamps for those members of the family.

Mr. Nicholson completed only a few years of primary schooling and is, for all intents and purposes, a functional illiterate. (His reading ability was found to be equivalent to that, approximately, of a third grade pupil.) In addition, his IQ was computed at 65, which the experts tell us is "mildly defective." Thus, while Mr. Nicholson can sign his name and command a working, albeit very elementary, knowledge of written and spoken English, he probably cannot read a newspaper or derive much pleasure from a book. Nevertheless the appellant has been a good husband and father of eight children for over a score of years and has maintained steadfast, if not very remunerative, employment for the last seventeen years. Indeed the record indicates that his employer considers him to be an indispensable and very gifted worker.

## I

The appellant bases his appeal on two assignments of error. Both of these assignments concern the defendant's alleged below-normal intelligence. First, the appellant insists that he was unable to give an intelligent waiver of his right to counsel and his right to remain silent during his interrogation at the state police barracks. Secondly, he insists that the statement taken from him and prepared by Officer Plantz in the officer's own handwriting was incomprehensible to him and, because it was taken by the arresting officer, should be, as a matter of law, inadmissible as evidence against him.

■ Although the appellant has been able to cite a plethora of cases in which this Court held that statements elicited by law enforcement authorities from persons who are incapable of knowingly and intelligently waiving their rights are inadmissible, we have never held that below-normal intelligence, *ipso facto* invalidates a confession. The fact that a citizen may be below average in intelligence or have received inadequate schooling means only that a law enforcement officer arresting him must be sensitive to that person's special needs before he allows him to waive the right to have a lawyer present during questioning.

In similar situations, this Court previously has examined the "total record" to find numerous violations of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) "that clearly required exclusion of [a] confession." *State v. Hamrick*, 160 W.Va. 673, 677, 236 S.E.2d 247, 249 (1977). In *Hamrick*, the defendant was undoubtedly a suspect when she was summoned to appear at the police barracks. No *Miranda* rights were accorded her before the interviews began and it was quite apparent that Mrs. Hamrick was a mentally disturbed person.

This Court repeatedly has reiterated its holding in *Hamrick* that confessions elicited by law enforcement personnel from criminal suspects who, because of mental condition, cannot knowledgeably and intelligently waive their rights are inadmissible. In *State v. Boyd*, 167 W.Va. 385, 280 S.E.2d 669 (1981) expert testimony was introduced showing that the appellant could not have read and understood the waiver of rights form prior to making his confession and conflicting testimony was presented

questioning whether the appellant was capable of understanding his constitutional rights even had they been read to him. In the *Boyd* interrogation the waiver of rights form was handed to the appellant by the state trooper who requested the appellant to read two lines of the form and explain them in his own words. The trooper then abruptly directed the appellant to read the remainder of the form silently to himself and sign it.

■ Although this Court has stated that a trial court, in dealing with a person of less than normal intelligence must be "cautious in determining whether the [suspect] could intelligently waive his right to counsel and make a voluntary statement," *State v. Daggett*, 167 W.Va. 411, 280 S.E.2d 545 at 554 (1981) we have never strayed, even where mental incompetents are concerned, from the notion that "a trial judge's determination that a confession is admissible will not be disturbed unless he was plainly wrong." *State v. Jackson*, 171 W.Va. 329, 298 S.E.2d 866, 869 (1982).

In the case before us, Mr. Nicholson was slowly and carefully read his constitutional rights by the arresting officer who inquired, after each sentence, whether Mr. Nicholson understood those rights. The appellant affirmed that he did and, by his own testimony, admitted he realized *what* was happening, if not precisely *why*.

■ Furthermore, an examination of the record is devoid of any suggestion that the appellant was vulnerable to intimidation. *See State v. Goff*, 169 W.Va. 778, 289 S.E.2d 473 (1982); *State v. Hamrick*, 160 W.Va. 673, 236 S.E.2d 247 (1977). Indeed the appellant himself testified about his independence and the record indicates that his is a most resolute demeanor. There is no evidence that the appellant was under any pressure or was coerced to waive his rights or to make any statement. Additionally, and recognizing that this is not necessarily dispositive, the appellant was not inexperienced with the criminal justice system. As this Court stated recently in another case directly on point:

> The evidence as discussed previously does not clearly show a lack of capacity to understand the meaning and effect of her confession. Cheshire was twenty-five years old at the time she confessed and had recent experience with the criminal justice system. She had been advised of her constitutional rights, including her right to counsel and her right to remain silent, in connection with her guilty pleas. Despite subnormal intelligence, the testimony indicates that she had learned from prior experiences. It may have been unwise for her to confess or even foolish, but that will not render an otherwise voluntary confession inadmissible.

*State v. Cheshire*, 173 W.Va. 123, 313 S.E.2d 61, 65 (1984).

■ The psychiatrist who examined Mr. Nicholson, Dr. Bradley Soule, testified that although the appellant's grasp of legal matters was rather vague, his patient:

> ... did seem to have the basic idea that it was the role of the prosecuting attorney to 'make the charges stick' and that of the defense attorney to clear him of the charges. Similarly he seemed to have some vague understanding of the role of the judge and jury in the trial process.

Dr. Soule also noted that Mr. Nicholson was competent to assist his lawyer in the preparation of his defense. This opinion was confirmed in essence by a psychologist who agreed that the appellant had enough street smarts adequately to comprehend his arrest and waiver of his right to counsel.

Finally we mention that the appellant has been a productive member of society most of his life even though he requires some welfare assistance to make ends meet. Thus, this Court believes that Mr. Nicholson intelligently waived his right to counsel and willingly gave his statement to the arresting authorities. Looking at the entire evidence it does not appear that the trial court's decision regarding voluntariness of the confession was plainly wrong or clearly against the weight of the evidence. *See State v. Adkins*, 170 W.Va. 46, 289 S.E.2d 720 (1982); Syl.Pt. 3, *State v.*

*Vance,* 162 W.Va. 467, 250 S.E.2d 146 (1978). Accordingly, the appellant's statement was properly admitted.

## II

The appellant argues in his second assignment of error that it is unfair to offer into evidence a statement signed by him but written by another. In a round-about way, the appellant asks this Court to fashion a rule that would require an interrogating official to record a suspect's interrogation. While this Court recognizes that there are certain merits to this suggestion, we believe that, on balance, such a requirement is impractical logistically, unnecessary given other protections that our system of interviewing suspects already provides, and, finally, in conflict with established precedent.

The general rule is that any confession or statement may be admitted against the accused when he freely offers it, in accordance with his constitutional rights, even if such confession or statement is reduced to writing by somebody else. Courts have been unanimous in allowing the admissibility of a statement in another's handwriting if that statement contained the substance of the accused's statement, was read by or to him, and was acquiesced in by him without objection. *United States v. Ward,* 575 F.Supp. 159, 162 (1983); *United States v. Johnson,* 8th Cir., 529 F.2d 581, 584, *cert. denied,* 426 U.S. 909, 96 S.Ct. 2233, 48 L.Ed.2d 835; *see, United States v. Evans,* 6th Cir., 320 F.2d 482, 484 (1963). In line with the overwhelming weight of authority, this Court holds that a confession or statement made by a suspect is admissible if it is freely and voluntarily made despite the fact that it is written by an arresting officer if the confession or statement is read, translated (if necessary), signed by the accused and admitted by him to be correct.

Accordingly, this Court affirms the conviction of the appellant. However, since the designated record does not disclose what sentence, if any, was given to the appellant, we remand this case for resentencing with due regard to the circumstances of this case.

Affirmed: Remanded for Further Proceedings.