328 S.E.2d 174

**STATE of West Virginia**

v.

**Roger WYANT.**

**No. 16357.**

Supreme Court of Appeals of West Virginia.

March 22, 1985.

---

Larry L. Skeen and John D. Hoffman, Skeen & Skeen, Ripley, for appellant.

S. Clark Woodroe, Asst. Atty. Gen., Charleston, for appellee.

Samuel Synder, Pros. Atty., Ripley, amicus curiae.

PER CURIAM:

This is an appeal from a final order of the Circuit Court of Jackson County, entered August 16, 1983, which sentenced the appellant, Roger Wyant, to a term of life imprisonment at the state penitentiary without possibility of parole upon his conviction, by jury verdict, of the crime of first degree murder. The appellant raises three principal assignments of error: (1) that the trial court erred in refusing to suppress a confession; (2) that the court erred in al-

lowing testimony relating to blood and hair samples taken from the alleged murder weapon; (3) that the State failed to prove the identity of the victim. We find no reversible error, and we affirm the order of the circuit court.

On May 20, 1983, the body of eighty-year-old Hettie Fisher was discovered in her home near Kenna, Jackson County. An autopsy later revealed that she had died of massive head injuries caused by blows from a blunt instrument.

In the course of their initial investigation, the police learned that the appellant was the last person known to have seen the victim alive. The appellant voluntarily accompanied the investigating officers to the state police detachment at Ripley, where he was questioned for several hours. The appellant was advised on two occasions that he was not under arrest and could leave at any time, but indicated a desire to assist in the investigation. The appellant also agreed, after being advised of his *Miranda* rights[1] and signing a waiver of rights form, to submit to a polygraph examination, which was administered by L.D. Huggins, an Assistant State Fire Marshal. The appellant denied any involvement in or knowledge of the crime and was allowed to leave the detachment at about 11:00 p.m. without having been placed under arrest.

On May 21, 1983 the police sought out the appellant for further questioning. Deputy Jerry Walters and Trooper R.A. Fisher located the appellant at approximately 6:00 p.m. fishing with friends. Trooper Fisher told the appellant "We'd like to talk to you over at the office," and the appellant agreed to accompany him to the detachment.

When the appellant arrived at the detachment offices at approximately 6:15 p.m., Marshal Huggins, who was already present at the detachment on other business, advised him that he was free to leave at any time and informed him of his *Miranda* rights. The appellant signed a waiver of rights form and was interviewed by Huggins for about forty-five minutes. Hug-

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

gins then left the interview room, and Trooper W.F. Donohoe II and Trooper M.G. Bright continued questioning the appellant, after first informing him that he was not under arrest and asking him if he understood the rights explained to him by Huggins. After about ten minutes, however, the appellant asked to speak to Huggins again. While alone with Huggins, the appellant began making incriminating statements, which he repeated in front of Trooper Donohoe. Huggins then left the appellant alone with Trooper Donohoe for approximately 15 minutes during which time the appellant confessed to having killed the victim by striking her over the head with a block of wood. Trooper Donohoe then called in Trooper Bright and explained to the appellant his *Miranda* rights. The appellant signed a waiver of rights form and made an oral statement, which Trooper Donohoe transcribed. The appellant was taken before a magistrate and arraigned at approximately 11:15 p.m.

The appellant was subsequently indicted on charges of first degree murder. On August 9, 1983, the first day of trial, an *in camera* hearing was conducted to determine the voluntariness of the appellant's confession. The trial court ruled the confession admissible, and, on August 15, 1983, the jury returned a verdict of guilty without recommendation of mercy. By order entered August 16, 1983, the appellant was sentenced to a term of life imprisonment without possibility of parole. On August 17, 1983, the appellant tendered a motion for a new trial which was denied by order entered the same day.

I

The appellant's first assignment of error is that the trial court erred in allowing the State to introduce into evidence the confession. His principal contention is that he lacked the mental capacity to understand and waive his rights or to comprehend the meaning and effect of a confession. Consequently he asserts that his confession was involuntary and should have been suppressed.

The appellant relies upon the established principle that "[c]onfessions elicited by law enforcement authorities from persons who because of mental condition cannot knowledgeably and intelligently waive their right to counsel are inadmissible." Syllabus Point 1, *State v. Hamrick*, 160 W.Va. 673, 236 S.E.2d 247 (1977). In *State v. Adkins*, 170 W.Va. 46, 289 S.E.2d 720, 727 (1982), we expounded upon this rule, holding that

> where a person of less than normal intelligence does not have the capacity to understand the meaning and effect of his confession, and such lack of capacity is shown by evidence at the suppression hearing, it is error for the trial judge not to suppress the confession. However, where the defendant's lower than normal intelligence is not clearly shown to be such as would impair his capacity to understand the meaning and effect of his confession, said lower than normal intelligence is but one factor to be considered by the trial judge in weighing the totality of the circumstances surrounding the challenged confession.

Our review of the trial court's ruling in such cases is guided by the principle that "[a] trial court's decision regarding the voluntariness of a confession will not be disturbed unless it is plainly wrong or clearly against the weight of the evidence." Syllabus Point 3, *State v. Vance*, 162 W.Va. 467, 250 S.E.2d 146 (1978).

At the suppression hearing the appellant introduced into evidence the testimony of Dr. D.A. Lawhon, a clinical psychologist who had administered intelligence tests to the appellant. Dr. Lawhon testified that these tests showed that the appellant had a verbal IQ of 66, which was in the mentally deficient range, and a performance IQ of 80, which was in the below average range. Dr. Lawhon estimated the appellant's full IQ at 70, indicating intellectual abilities in the borderline mentally retarded range. Dr. Lawhon testified that the appellant had scored 70 on the Wechsler memory quotient test and that he demonstrated a reading level of 2.9 (ninth month of second grade), indicating less than functional illiteracy. Psychological testing showed no ev-

idence of personality or pathological disturbances.

Dr. Lawhon also testified, however, that the appellant was mentally capable of understanding the *Miranda* rights contained on the waiver form and of comprehending the meaning and effect of a confession. Dr. Lawhon further testified that the appellant was able to recall and relate past events and that his functional reading and writing skills were at a level below that of his demonstrated intellectual capacity.

■ It is apparent that this evidence did not clearly show that the appellant's lower than normal intelligence was such as to impair his ability to understand the meaning and effect of the confession or to comprehend and waive his rights. Indeed, Dr. Lawhon's uncontradicted testimony established exactly the opposite: that the appellant did in fact have the mental capacity to make a knowing and voluntary confession.

■ Nor can we conclude, after a careful review of all the circumstances surrounding the appellant's confession, including his impaired intellectual abilities, that the trial court erred in holding that the confession was freely and voluntarily given. Although the appellant apparently had no previous experience with the criminal justice system, he was twenty-four years old and, as we have noted, had sufficient intelligence to understand the constitutional rights which were repeatedly read and explained to him throughout the investigation, including his right to remain silent and his right to an attorney. He not only signed waiver of rights forms on three separate occasions, but also repeatedly told the interviewers that he wanted to cooperate in the investigation. At no time did he request an attorney. There is no evidence of any coercion, threats or promises of leniency made during the interrogation to induce the appellant to confess. Indeed it appears that the investigating authorities were courteous and solicitous of the appellant's rights throughout the investigation. Although there was some evidence that the appellant had been drinking on May 21, 1983, there was no evidence to indicate that the appellant was intoxicated or suffering from a diminished capacity as a result.

In sum, we cannot say that the trial court was clearly wrong in concluding that the appellant's confession was voluntary in view of all the circumstances. Accordingly we find no reversible error in the admission of the confession at trial on this ground.

The appellant also raises two additional grounds for suppression of the confession which were not asserted below. First, he contends that although he was not formally arrested, he was taken into custody when he was picked up for questioning by Deputy Walters and Trooper Fisher on May 21, 1983. He asserts that since there was no probable cause to arrest him at that time, the confession obtained should have been, excluded as the product of an illegal arrest. *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); *State v. Stanley*, W.Va., 284 S.E.2d 367 (1981); *State v. Canby*, 162 W.Va. 666, 252 S.E.2d 164 (1979).

■ This contention is not supported by the record. The evidence shows that the appellant voluntarily accompanied the police to Ripley for questioning. Moreover, once he had arrived at the detachment, the appellant was advised on two separate occasions that he was not under arrest and was free to leave. On both occasions the appellant indicated his desire to remain and cooperate with the investigation. Even if we discount the testimony of the investigating officers to the effect that the appellant was not a suspect at that time, there is no evidence which would lead a reasonable person to conclude that he had been effectively deprived of his liberty at that point. It was not until the appellant began making incriminating statements that his presence at the detachment could be viewed as anything but voluntary. At that point there was probable cause to detain him. Accordingly, we find no evidence of an unlawful arrest which would vitiate the appellant's confession.

The appellant also contends that the confession was inadmissible because of the delay in taking him before a magistrate as

required by W.Va.Code § 62–1–5 (1984 Replacement Vol.).[2] The delay complained of was occasioned by the taking of a written statement from the appellant following his oral confession. Since the appellant expressed difficulty in reading and writing, Trooper Donohoe elected to transcribe the appellant's answers to his questions. Trooper Donohoe then went back over the six-page statement line by line, reading to the appellant each question and answer and having the appellant initial each answer before signing the entire statement. The entire process was completed at around 10:15 p.m., approximately two and one half hours after it had begun. The appellant was then fingerprinted, photographed and, finally, arraigned at approximately 11:15 p.m.

■ An unreasonable and unjustified delay in taking an accused before a magistrate after his initial arrest may, in itself, render a confession inadmissible at trial. *State v. Persinger,* 169 W.Va. 121, 286 S.E.2d 261 (1982). We have recognized, however, that in such cases "the focus is not so much on the length of the detention but whether the police were primarily using the delay in bringing the defendant before a magistrate to obtain a confession from him." *Id.,* 169 W.Va. at 136, 286 S.E.2d at 270.

■ Here, it does not appear that the purpose of the delay in presentment was to obtain the appellant's confession. Indeed, as we have noted, there was no probable cause to arrest the appellant until he had confessed. Rather, the purpose of the delay appears to have been to record the appellant's statement. The procedure used by the arresting officers was admittedly tedious and time-consuming, and is not favored by this Court. However, in view of the circumstances of this case, we do not believe the delay in presentment was so unreasonable or unjustified as to require suppression of the confession. *See State v.*

*Nicholson,* 174 W.Va. 573, 328 S.E.2d 180 (1985); *State v. Mitter,* 169 W.Va. 652, 289 S.E.2d 457 (1982).

## II

The appellant also contends that the trial court erred in allowing the State to introduce at trial evidence of the results of scientific tests performed on the block of wood alleged to have been the murder weapon. Corporal S.G. Midkiff, a state police forensic serologist, testified that she performed a chemical test, known as the leuco-malachite green test, on the wood which revealed the presence of blood, although she was unable to determine by further analysis whether the blood was human. Corporal Midkiff also testified she had performed a microscopic examination of hairs removed from the same area of the wood where the bloodstains appeared and containing traces of the blood, and had concluded that they were human head hairs. She testified that a comparison of these specimens with a known sample of the victim's hair showed that the hairs taken from the wood were microscopically consistent with those of the victim and could have come from her. Corporal Midkiff also testified, however, that she could not positively identify that the hair on the alleged murder weapon as having come from the victim since ordinarily there are not enough unique characteristics in hair from which to determine positively that an unknown specimen came from a particular person to the exclusion of all other individuals.

The appellant initially contends that this testimony was inadmissible because the State made no showing that the tests conducted by its expert were based on a generally accepted scientific principle. In *State v. Clawson,* 165 W.Va. 588, 270 S.E.2d 659 (1980), we held that such a showing, which goes to the accuracy and reliability of the

2. W.Va.Code, 62–1–5 states in its entirety:
An officer making an arrest under a warrant issued upon a complaint, or any person making an arrest without a warrant for an offense committed in his presence, shall take the arrested person without unnecessary delay before a justice of the county in which the arrest

is made. When a person arrested without a warrant is brought before a justice, a complaint shall be filed and a warrant issued forthwith. The officer executing the warrant shall make return thereof to the justice before whom the defendant is brought.

tests used, is a prerequisite to the admissibility of expert testimony as to the results of scientific tests, unless the tests have been so widely used over a period of time such that judicial notice can be taken of their general acceptance in the scientific community.

 We note, however, that the appellant offered no objection at trial to the introduction of Corporal Midkiff's testimony on this ground. "Error in the admission of testimony to which no objection was made will not be considered by this Court on appeal or writ of error, but will be treated as waived." Syllabus Point 4, *State v. Michael,* 141 W.Va. 1, 87 S.E.2d 595 (1955). Accordingly, we need not review this assignment of error on appeal. *See State v. Clawson, supra; State v. Frisby,* 161 W.Va. 734, 245 S.E.2d 622 (1978), *cert. denied,* 439 U.S. 1127, 99 S.Ct. 1043, 59 L.Ed.2d 87 (1979).

The appellant did object on the ground that the evidence was irrelevant since Corporal Midkiff could not testify with a reasonable degree of certainty that the hair and blood found on the wood belonged to the victim. We are of the opinion, however, that this issue relates to the weight to be given the evidence, rather than bearing upon its admissibility. *See State v. Johnson,* 111 W.Va. 653, 164 S.E. 31 (1932). *See generally, Annot.* 23 A.L.R. 4th 1199 (1983). Accordingly, the matter was properly submitted to the jury.

### III

The appellant's final assignment of error, that the State failed to prove the identity of the victim, is apparently predicated on the fact that although the victim was known in the community by the name of Hettie Fisher, her legal name may have been Hettie King as the result of a marriage which was never dissolved. She was named in the indictment and referred to at trial as Hettie Fisher, Hettie King and Hettie King, also known as Nettie Fisher.

This is clearly not a case where the State has failed to prove the identity of the deceased. There was merely some question as to whether the victim's legal name was Hettie Fisher or Hettie King, both of which names were shown to identify the victim of the homicide. The State's efforts to insure that the indictment carried the victim's legal name as well as the one by which she was commonly known and identified are laudable, though hardly necessary. *See State v. Lemon,* 84 W.Va. 25, 99 S.E. 263 (1919); *State v. Alie,* 82 W.Va. 601, 96 S.E. 1011 (1918). Accordingly, we find no error.

For the reasons stated herein, we are of the opinion that the trial court committed no error warranting reversal of the appellant's conviction. Accordingly the orders of the Circuit Court of Jackson County, entered on August 16 and 17, 1983, are affirmed.

Affirmed.