337 S.E.2d 316

**STATE of West Virginia**

v.

**Bernard WALLACE.**

**No. 16545.**

Supreme Court of Appeals of West Virginia.

Nov. 20, 1985.

Mark Hobbs, Chapmanville, for appellant.

Bethony R. Boyd, Asst. Atty. Gen., Charleston, for appellee.

PER CURIAM:

A jury in McDowell County convicted the defendant, Bernard Wallace, of attempted aggravated robbery and of unlawfully carrying a deadly weapon. He was sentenced to thirty years in the state penitentiary on the robbery charge and to six months in the McDowell County Jail on the deadly weapon charge. The two sentences were imposed so as to run concurrently.

On appeal the defendant claims that the convictions were contrary to the evidence adduced against him and that the trial court erred in overruling his motions for directed verdicts. He contends that the court erred in admitting certain hair-sample evidence, and he argues that the court improperly instructed the jury on, and allowed it to consider, the deadly-weapon charge. Lastly, he claims that the court erred in failing to sequester the jury.

After carefully reviewing the record, we conclude that the trial court committed no reversible error in regard to the aggravated-robbery charge. We do find, however, that the giving of the instruction on the deadly-weapon charge was unwarranted, and we reverse the defendant's conviction on that charge.

The evidence adduced during the defendant's trial shows that at approximately 11:00 a.m. on December 21, 1982, a man wearing a ski mask and holding a pistol approached Greg Roope, an employee of a supermarket located in Welch, West Virginia. Mr. Roope, who was behind the supermarket, was carrying a bag of money. The masked man placed the pistol against Mr. Roope's cheek and demanded the money. Mr. Roope resisted the demand and swung the bag of money at the aspiring robber. In the scuffle the ski mask fell off the robber's head, and the robber dropped the pistol after it had discharged, leaving powder burns on Mr. Roope's cheek. The robber, whose face was distorted by a lady's stocking which had been placed under the ski mask, ran away. At the time of the incident, there was snow on the ground in Welch, and the robber, in running away, left a clear trail of footprints.

The commotion surrounding the attempted robbery attracted the attention of several individuals, and the police were sum-

moned. One of the individuals, Mr. Robinette, ran toward the scene of the crime and got a good view of the robber and was able to identify his clothing.

After arriving at the scene and speaking briefly with Mr. Roope, the police officers followed the trail of footprints which the robber had left in the snow. As they were following the tracks, Caroline Stewart, who lived at the top of a hill, asked one officer what he was looking for. He told her that a supermarket had been robbed and asked her whether she had observed anyone passing her window. She replied that a short, black male, wearing blue jeans, a blue jacket, and a lady's stocking on his head had run past her house about ten minutes earlier. Her description of the individual's clothing matched that of the clothing of the robber given by Mr. Roope and Mr. Robinette.

The police officers continued to follow the footprints and found that they led to the door of a house owned by Audrey Walker. At that house they learned from Henry Martin, who was baby-sitting there at the time of the robbery, that the defendant, Bernard Wallace, had just been there and that he was breathing hard. The defendant had told him that he had been jogging and that he wanted to borrow a pair of pants. Without asking questions, Mr. Martin gave the defendant a pair of pants, which proved to be too large.

The police officers located the defendant at around 2:30 p.m. and placed him under arrest.

## I.

On appeal, the defendant claims that his convictions are not supported by law or evidence and that the trial court erred in denying his various motions for directed verdicts and to set aside the verdicts of the jury. He says that the State's case was entirely circumstantial and that, at best, showed that he had the opportunity to rob Mr. Roope on December 21, 1982. He argues that no evidence was introduced from any witness which positively identified him as the perpetrator of the crimes involved and that no incriminating statements were made or introduced against him. He takes the position that the circumstantial evidence did not rise to the level necessary to support the guilty verdicts.

■ In syllabus point 1 of *State v. Starkey*, 161 W.Va. 517, 244 S.E.2d 219 (1978), this Court stated the standard which should be applied in reviewing the sufficiency of evidence in a criminal trial. In that syllabus point the Court stated:

> In a criminal case, a verdict of guilt will not be set aside on the ground that it is contrary to the evidence, where the state's evidence is sufficient to convince impartial minds of the guilt of the defendant beyond a reasonable doubt. The evidence is to be viewed in the light most favorable to the prosecution. To warrant interference with a verdict of guilt on the ground of insufficiency of evidence, the court must be convinced that the evidence was manifestly inadequate and that consequent injustice has been done.

The Court has also consistently held that where circumstantial evidence concurs as to time, place, motive, means, and conduct in pointing to the accused as the perpetrator of the crime, it is sufficient to. support a conviction. *State v. Williams*, 172 W.Va. 295, 305 S.E.2d 251 (1983); *State v. Dobbs*, 163 W.Va. 630, 259 S.E.2d 829 (1979); *State v. Bailey*, 151 W.Va. 796, 155 S.E.2d 850 (1967); *State v. Beale*, 104 W.Va. 617, 141 S.E. 7 (1928); *State v. Gunnoe*, 74 W.Va. 741, 83 S.E. 64 (1914).

In the case presently before the Court the primary dispute centers on the identity of the perpetrator of the crime. Although Mr. Roope was unable to make a positive identification of the defendant as the robber, his description of the robber's stature, build, and clothing matched the description of the stature and build of the defendant and matched the description of the defendant's clothing as given by Caroline Stewart, who saw an individual on the footprint trail a short time after the crime. The footprints in the snow led from the scene of the crime to the house where Henry Martin was staying and at which Henry Martin spoke with the defendant a short

time after the commission of the crime. The set of footprints was an isolated set.

■ The fact that there was an isolated set of footprints in the snow immediately after the robbery indicates that only one individual used the escape route immediately after the robbery. The testimony of Caroline Stewart and Henry Martin indicates that the defendant was that individual. Additionally, the description of the robber as given by Greg Roope matched the description of the defendant. Given the facts, the Court is of the opinion that the evidence, although circumstantial, was properly submitted to the jury and that it cannot be said injustice has been done with regard to the attempted aggravated robbery charge. Under the principles set forth in syllabus point 1 of *State v. Starkey, supra*, the defendant's conviction should not be set aside on the ground that the verdict was contrary to or not supported by the evidence.

## II.

During the trial, the State also offered evidence showing that a hair had been recovered from the ski mask which had been dropped at the scene of the crime. An expert witness, Sergeant Fred Zane, who was in charge of the serology section at the Criminal Identification Bureau, compared this hair with a hair sample removed from the defendant. Sergeant Zane described a number of comparison tests which he had performed on the two hair samples and testified that they had similar characteristics, and that the sample from the ski mask could have belonged to the defendant. Defense counsel cross-examined Sergeant Zane closely, and Sergeant Zane stated that he could not state definitely that the hair on the ski mask came from the defendant.

During the examination of Sergeant Zane defense counsel generally objected to the admission of the two hair samples into evidence, but he did not articulate his reasons for making the objections. The objections were made before Sergeant Zane described the tests which he made on the hair samples and before he related his conclusions.

On appeal the defendant takes the position that Sergeant Zane's testimony was inadequate to connect the hair sample from the ski mask with the sample of his own hair. He argues that under the circumstances, the hair sample evidence was not relevant or material and that the trial court committed reversible error in admitting it. We believe that the defendant's contention is without merit.

In *State v. Clawson*, 165 W.Va. 588, 270 S.E.2d 659 (1980), this Court discussed hair sample evidence and held that before expert testimony should be admitted into evidence as to the results of scientific tests a hearing should be conducted to determine whether the tests are based on generally accepted principles, unless the tests have been widely used over a period of time so that judicial notice can be taken of their general acceptance in the scientific community. The Court also indicated, however, that where there is no objection to the scientific accuracy or reliability of the tests, the question should not be taken up by the Court.

In the case presently under consideration, the defendant's claim does not go to the scientific reliability of the tests, but to the materiality and relevancy of Sergeant Zane's conclusions as to his comparison. He, in effect, argues that because Sergeant Zane could not definitively connect the hair sample found on the mask with the defendant, the evidence should have been excluded.

■ The question raised by the defendant is similar to that recently posed in *State v. Wyant*, 174 W.Va. 567, 328 S.E.2d 174 (1985). In *Wyant* the Court noted that lack of comparison certainty is not a sufficient basis for excluding hair-comparison evidence. It is, instead, a factor which relates to the weight to be given to the evidence and should not serve as the ground for reversal of a conviction. This is a widely recognized view. *See generally, Annot.* 23 A.L.R. 4th 1199 (1983), and the cases discussed therein.

## III.

At the conclusion of the evidence the parties offered a number of instructions, including State's Instruction B. That instruction indicated that carrying any dangerous or deadly weapon without a State license or other lawful authorization was a misdemeanor punishable by imprisonment in the county jail for not less than six months nor more than twelve months, and by imposition of a fine. During trial the State introduced evidence indicating that the pistol used during the attempted robbery had been stolen but did not directly prove that the defendant did not have a license or other legal authorization for carrying the pistol. The defendant objected to the giving of State's Instruction B on the ground that the State had not introduced evidence indicating that he did not have a license for the weapon. In spite of the defendant's objection, the trial court gave the instruction, and the defendant was convicted of carrying a deadly weapon without a license.

■ In *State v. Hodges*, 172 W.Va. 322, 305 S.E.2d 278 (1983), the Court specifically held, in syllabus point 6, that:

> The absence of a license is an element of the crime of carrying a dangerous or deadly weapon without a license and the burden of proof as to this element must be borne by the State. To the extent it diverges from this opinion, *State v. Merico*, 77 W.Va. 314, 87 S.E. 370 (1913) is hereby overruled.

Under the rule enunciated in this syllabus point the trial court erred in giving State's Instruction B during the defendant's trial, and the defendant's conviction of carrying deadly weapon which grows out of the giving of this instruction must be reversed.

## IV.

Lastly, the defendant contends that the trial court erred in failing to sequester the jury involved in the case.

The record indicates that defense counsel made no motion to sequester the jury and that the jury, after retiring, was called back into the courtroom at 12:15 p.m. by the court and recessed for a lunch break. The court admonished the jurors as to their responsibilities and instructed them to return to the courtroom at 1:15 p.m. One juror did not return until 1:27, twelve minutes late. Upon her return the court questioned her regarding her absence, and she indicated that she had trouble getting her car started. The trial judge concluded from his examination of the juror that there was no evidence that the jury's verdict was contaminated by the juror's lateness in returning to the courtroom.

The defendant argues that under the circumstances the jury should have been sequestered.

■ *W.Va.Code*, 62-3-6 places the decision on sequestering a jury in felony cases in the discretion of the trial court. In *State v. Young*, 173 W.Va. 1, 311 S.E.2d 118 (1983), this Court ruled that when a party raises the question of whether a jury should be sequestered he has the burden of providing the trial court with an adequate basis to support a finding that there is a reasonable probability that in the absence of sequestration the jury will be exposed to outside influences which could improperly taint the verdict.

■ In the case presently before the Court, no motion was made for the sequestration of the jury, and it does not appear that the factors examined in *State v. Young*, which require a trial court *sua sponte* to sequester the jury, were present. Lastly, there is no showing that the jury's verdict was tainted by the failure to sequester the jury.

In view of all these circumstances, the Court is of the opinion that the defendant's contention regarding the failure of the trial court to sequester the jury is without merit.

For the reasons stated, the judgement of the Circuit Court of McDowell County, sentencing the defendant to the McDowell County Jail for carrying a deadly weapon without a license is reversed and set aside, and the judgement of the Circuit Court, sentencing the defendant to thirty years in

the state penitentiary for aggravated robbery is affirmed.

Reversed in part, affirmed in part.