401 S.E.2d 457

**STATE of West Virginia**

v.

**Bobby Walter McCARTY.**

No. 19383.

Supreme Court of Appeals of West Virginia.

Dec. 14, 1990.

Rehearing Denied Feb. 6, 1991.

Richard E. Hardison, Beckley, for Bobby Walter McCarty.

Roger W. Tompkins, Atty. Gen., Joanna Tabit, Asst. Atty. Gen., Charleston, for State.

PER CURIAM:

This is an appeal by Bobby Walter McCarty from an order of the Circuit Court of Wyoming County sentencing him to life in the Penitentiary, with a recommendation of mercy, for first-degree murder. On appeal, he claims that the evidence considered in the light most favorable to the State was not sufficient to support a first-degree murder verdict. He also claims that the trial court erred in allowing a State trooper to comment on his invocation of his right to remain silent; that the court erred in admitting into evidence the products of an illegal search and seizure; that the court erred in admitting into evidence an alleged

threat made by him to the victim at a time too remote to be considered as evidence; and that the court erred in granting an instruction proffered by the State. After reviewing the record, this Court can find no reversible error. Accordingly, the judgment of the Circuit Court of Wyoming County is affirmed.

On the night of November 14, 1987, Wayne Johnson was stabbed to death in a scuffle with the defendant, Bobby Walter McCarty, outside a bar located in Wyoming County. Evidence adduced by the State showed that prior to the stabbing there had been bad feelings between the defendant and Mr. Johnson and that approximately one month before the incident the two individuals had been in a shouting match. According to the evidence, at the conclusion of that shouting match the defendant pushed Johnson, punched him in the chest with his fingers, and said, "There'll be another day and another time and I will stick you."

On the night of Johnson's death, both the defendant and Johnson were at Ward's, a local bar. Johnson arrived with two of his friends, Gordon Hickman and Dave Lambert, and the defendant arrived with his son and Wimpy Lester. At one point in the evening, Wimpy Lester, who had had too much to drink, jumped on Gordon Hickman and the two began fighting. Another individual present in the bar, Earl Cooke, tried to break up the fight, and the defendant tackled him to prevent his interference. Two individuals then pulled the defendant off Cooke. At this point, the defendant and Johnson, who was subsequently stabbed, exchanged words.

Later that evening, Wimpy Lester, who was in the defendant's party, passed out on the floor. The owner of the bar asked the defendant to take Lester out of the bar, and the defendant carried him out to his car.

While the defendant was outside, the victim, Wayne Johnson, and his friends left the bar. According to evidence adduced by the State, when Johnson got outside, the defendant shoved him in the chest and began shouting at him. Johnson started to walk away and then turned around and walked toward the defendant. The men argued and began fighting.

The evidence is conflicting as to exactly how the fight began. Some witnesses indicated that Johnson hit the appellant first, while some indicated that the defendant hit Johnson first. Substantial evidence indicates that Wayne Johnson, the victim, was on top of the defendant when the fight stopped. At this point, Johnson had been stabbed. He later died as a consequence of the wound.

The defendant had blood on his shirt and believed that he had been cut. He, therefore, requested that his son take him to a hospital. In route to the Welch Emergency Hospital, the defendant and his son were stopped within the city limits of Pineville by the Pineville police, who had noticed that the windshield of the defendant's vehicle was severely damaged and his emergency hazard lights were flashing.

A short time after the defendant and his son were stopped, Trooper Jennings, a member of the West Virginia Department of Public Safety, arrived at the scene. Jennings, observing that the defendant was covered with blood, and having heard about the fight, asked that the defendant accompany him to the Wyoming County Jail. Jennings did not advise the defendant of his *Miranda* rights prior to placing him in the police cruiser and did not advise him of his rights until approximately one hour later.

After the party arrived at the jail, Trooper Jennings obtained a statement from Bryan Graybeal, an eyewitness to the homicide. Based upon the eyewitness account, Jennings placed the defendant under arrest for the death of Wayne Johnson.

The defendant was subsequently indicted and tried for first-degree murder. In the course of the trial, the State developed the evidence relating to the scuffle and demise of Wayne Johnson as outlined above. The State also introduced into evidence a pocket knife and a pair of trousers which were seized from the defendant on the night of the incident. The defendant during trial in essence claimed that he had acted in self-

defense, that Johnson had died as a result of improper medical treatment, and that the injuries to Johnson had been inflicted in the heat of blood and that at most he was guilty of voluntary manslaughter. He also suggested that as a result of a previous head injury he had blacked out momentarily during the scuffle and thus could not have possessed the requisite mental culpability for anything higher than voluntary manslaughter.

At the conclusion of the evidence, the trial court instructed the jury on the law relating to the crimes charged, and, after retiring, the jury returned with a verdict of guilty of murder in the first degree with a recommendation of mercy.

On appeal, the defendant's first contention is that the evidence, considered in the light most favorable to the State, was not sufficient for a finding of murder in the first degree.

█ In syllabus point 1 of *State v. Starkey*, 161 W.Va. 517, 244 S.E.2d 219 (1978), this Court established the standard to be used in analyzing the sufficiency of evidence on appeal. In that syllabus point the Court stated:

> In a criminal case, a verdict of guilt will not be set aside on the ground that it is contrary to the evidence, where the state's evidence is sufficient to convince impartial minds of the guilt of the defendant beyond a reasonable doubt. The evidence is to be viewed in the light most favorable to the prosecution. To warrant interference with a verdict of guilt on the ground of insufficiency of evidence, the court must be convinced that the evidence was manifestly inadequate and that consequent injustice has been done.

*See also State v. Holland*, 178 W.Va. 744, 364 S.E.2d 535 (1987); *State v. Wallace*, 175 W.Va. 658, 337 S.E.2d 316 (1985); *State v. Williams*, 172 W.Va. 295, 305 S.E.2d 251 (1983).

*West Virginia Code*, 61–2–1, defines first degree murder: "Murder by poison, lying in wait, imprisonment, starving, or by any willful, deliberate and premeditated killing, or in the commission of, or attempt to commit, arson, sexual assault, robbery or burglary, is murder of the first degree."

█ In the present case, there was sufficient evidence from which a jury reasonably could have concluded that the defendant stabbed the victim with a knife. The victim clearly was stabbed, and at the time of the stabbing the defendant and victim were fighting. A knife was subsequently taken from the defendant. Sometime prior to the incident, the defendant had been involved in a shoving match with the victim and had stated "[t]here'll be another day and another time and I will stick you." There were obviously ill feelings between the defendant and the victim on the night of the killing.

This Court believes that the evidence viewed in the light most favorable to the prosecution supports the conclusion that the defendant stabbed the victim maliciously. The physical circumstances support the conclusion that the defendant stabbed the victim, and from the ill feelings between them and from the defendant's remark that he would "stick" the victim, a jury reasonably could have concluded that the defendant had done so with deliberation and premeditation. In short, in this Court's view, the State's evidence was sufficient to convince impartial minds of the guilt of the defendant beyond a reasonable doubt, and, given the nature of the evidence, this Court is not convinced that it was manifestly inadequate or that consequent injustice had been done.

█ The defendant next claims that the trial court erred in allowing State Trooper Jennings to comment on the defendant's invocation of his Fifth Amendment right to remain silent.

Trooper Jennings, who took the defendant into custody, testified about the circumstances surrounding the apprehension. The testimony of Trooper Jennings about which the defendant complains was contained in the following colloquy:

> Q. What did you do at that point [after you arrested and searched the defendant]?

A. I attempted to obtain a statement from Mr. McCarty prior to obtaining fingerprints and necessary information, or shortly after. He didn't—he said he would rather talk with an attorney.

In challenging this testimony, the defendant relies upon *State v. Boyd,* 160 W.Va. 234, 233 S.E.2d 710 (1977), in which the Court held, in syllabus point 1, that:

Under the Due Process Clause of the West Virginia Constitution, Article III, Section 10, and the presumption of innocence embodied therein, and Article III, Section 5, relating to the right against self-incrimination, it is reversible error for the prosecutor to cross-examine a defendant in regard to his pre-trial silence or to comment on the same to the jury.

In the *Boyd* case the Court also recognized that the prosecution may not use a criminal defendant's pre-trial, post-arrest silence to impeach his later testimony.

A careful examination of the evidence challenged in the present case shows that it was not adduced during the cross-examination of the defendant or in an attempt to impeach the defendant. Rather, it was adduced during the direct examination of one of the State's witnesses.

On a number of occasions the Court allowed prosecutorial statements that do not specifically or directly refer to a defendant's failure to make a statement. *State v. McClure,* 163 W.Va. 33, 253 S.E.2d 555 (1979); *State v. Simon,* 132 W.Va. 322, 52 S.E.2d 725 (1949). Similarly, in *State v. Clark,* 170 W.Va. 224, 292 S.E.2d 643 (1982), the Court refused to reverse when the prosecutor commented that there was no evidence to contradict certain remarks made by the defendant.

In *State v. Clark,* the Court indicated that the general rule for determining whether a prosecutor's comment is an impermissible reference, direct or oblique, to silence of the accused, is whether the language used was manifestly intended to be or was of such character that the jury would necessarily and naturally take it to be a reminder that the defendant did not speak out.

This Court believes that in the present case Trooper Jennings merely testified that subsequent to the time the defendant was taken into custody and searched, he preferred to consult with an attorney rather than to give a statement. The Court also believes that the testimony was elicited as part of an on-going commentary on the events that transpired on the night of the homicide and that the remark was neither intended to be, nor reasonably could be viewed, as a reference, direct or oblique, to the defendant's silence.

The defendant next claims that the court erred in admitting into evidence the pocket knife and trousers which were seized from him on the night of November 14, 1987. He claims that these items were the products of an illegal search and seizure. He argues that he was *de facto* arrested when he was placed in the police cruiser and transported to the county jail for questioning, and he claims that he should have been administered *Miranda* warnings at that time. He, in essence, argues that the failure of the State to administer the *Miranda* warnings, at that time, vitiated his arrest and that all items seized pursuant to it were, in effect, the fruit of a poison tree.

A careful examination of the record shows that the defendant was placed in a police cruiser and, in effect, placed in custody when he was stopped while heading toward the Welch Emergency Hospital. He clearly was not administered his *Miranda* warnings at that time. He was subsequently, however, transported to the Wyoming County jail and, at the jail, he was formally placed under arrest after a statement was obtained from an eye witness to the killing. The defendant was advised of his *Miranda* rights when he was formally arrested and was not subjected to custodial interrogation until after his formal arrest and after the *Miranda* warnings were administered.

Recently, in *State v. Preece,* 181 W.Va. 633, 383 S.E.2d 815 (1989), this Court explained that the *Miranda* ruling resulted from concern by the Supreme Court of the

United States over the voluntariness of statements provided by individuals who are in custody and who were interrogated. The Court said that "[t]he ruling was intended to apply only when the suspect was interrogated in a custodial atmosphere, ...", 181 W.Va. at 637–38, 383 S.E.2d at 819–20. The Court further indicated that the *Miranda* safeguards were never intended to apply to the typical, on-the-scene investigation which ordinarily does not create the type of coercive atmosphere that *Miranda* involved. The Court stated, in syllabus point 1, that "*Miranda* warnings are required whenever a suspect has been formally arrested or subjected to custodial interrogation, regardless of the nature or severity of the offense."

Clearly, the thrust of the *Miranda* protections is to protect a defendant in a custodial interrogation situation. It developed as a result of the Supreme Court's concern for an individual's Fifth Amendment right to be protected from self-incrimination.

Search and seizure involves not the Fifth Amendment privilege against self-incrimination, but the Fourth Amendment protection from unlawful searches and seizures.

■ This Court has recognized that the police have the right to effect a warrantless arrest in public based on probable cause that a person has or is about to commit a felony. As stated in syllabus point 4 of *State v. Howerton*, 174 W.Va. 801, 329 S.E.2d 874 (1985):

> The right to arrest in public without a warrant, based on probable cause that the person has or is about to commit a felony, is the general if not universal rule in this country.

The Court has also recognized that probable cause exists when the facts and circumstances within the knowledge of the arresting officer are sufficient to warrant a prudent man in believing that an offense has been committed. *State v. Giles*, 183 W.Va. 237, 395 S.E.2d 481 (1990); *State v. Drake*, 170 W.Va. 169, 291 S.E.2d 484 (1982); *State v. Craft*, 165 W.Va. 741, 272 S.E.2d 46 (1980).

■ The record in the present case establishes that Trooper Jennings had probable cause to arrest the defendant when he asked the defendant to accompany him to the jail for questioning. Trooper Jennings was aware of the circumstances surrounding the incident resulting in the victim's death, and when he arrived at the site where the defendant had been stopped, Trooper Jennings observed that the defendant was covered with blood, although he himself had sustained no knife wounds.

■ In this Court's view, the fact that the defendant was not administered his *Miranda* warnings at the time he was initially taken into custody, while it may have affected the admissibility of statements made by the defendant, did not render the arrest illegal. Since the Court cannot conclude that the arrest was illegal, it cannot say that the physical items reasonably seized pursuant to the arrest were inadmissible.

The defendant next claims that the trial court erred in admitting the testimony that approximately a month before the homicide he had told the victim: "There'll be another day and another time and I will stick you." He claims that the remark was made at a time too remote to be properly considered as evidence of his state of mind at the time of the altercation with the deceased.

■ Generally prior threats to kill by a specific method are admissible in cases of this type. As stated in syllabus point 5 of *State v. Duell*, 175 W.Va. 233, 332 S.E.2d 246 (1985):

> "Evidence of a threat made by a defendant on trial for murder, against the life of the person alleged to have been murdered, coupled with a statement of the manner or means by which such threat was intended to be carried out, is admissible." Syl. pt. 3, *State v. Flint*, 142 W.Va. 509, 96 S.E.2d 677 (1957).

■ Although on occasion remoteness of such a remark may affect its admissibility, the Court has recognized that "[a]s a general rule remoteness goes to the weight to be accorded the evidence by the jury, rather than to admissibility." Syllabus point 6, *State v. Gwinn*, 169 W.Va. 456, 288 S.E.2d 533 (1982). Essentially, whether the evidence offered is too remote is for the trial court to decide in the exercise of

sound discretion, and the admission or exclusion of such evidence will not be disturbed by this Court unless it appears that the trial court's action amounts to an abuse of discretion. *See Yuncke v. Welker*, 128 W.Va. 299, 36 S.E.2d 410 (1945).

■ In the present case, the Court cannot say that the trial court erred or abused its discretion in allowing the challenged evidence. As previously indicated, threats against the life of a person subsequently killed, where the manner or means intended for carrying out such threats are encompassed within the threat, are generally admissible into evidence. It is not unreasonable for an individual to premeditate a murder for a month or more before the actual event. There is evidence of on-going ill feelings of the defendant toward the victim, and the overall evidence suggests that the defendant killed the victim in the manner suggested by the remark. The defendant was afforded an opportunity to rebut the remark and to explain it.

■ Lastly, the defendant claims that the trial court erred in granting State's Instruction No. 5.

State's Instruction No. 5 stated:
The Court instructs the jury that intoxication can never be used as a defense where it is alleged that there was diminished capacity, but can only be used where there is demonstrated a total lack of capacity such that the bodily machine completely fails; furthermore, where a weapon is involved, it must affirmatively appear that the defendant had no predisposition to commit the crime or to engage in aggressive anti-social conduct which the voluntary intoxication brought to the forefront.

This instruction was given on the basis of the holdings in *State v. Brant*, 162 W.Va. 762, 252 S.E.2d 901 (1979) and *State v. Robinson*, 20 W.Va. 713 (1882).

In conjunction with his challenge to the instruction, the defendant argues that there was no evidence adduced, nor was there an issue raised by him, which would justify the giving of State's Instruction No. 5.

When the State offered the instruction, the defendant indicated affirmatively on the record that he did not object to it. Accordingly, the trial court stated that the instruction would be given to the jury. Later, after the State's malice instruction was offered and after the trial court determined that it would be given to the jury, the defendant generally objected to the intoxication instruction, but did not cite any specific ground for his objection. He simply stated: "Your Honor, on second thought, I'm going to have to object to State's Instruction 5."

■ The Court notes that under Rule 30 of the West Virginia Rules of Criminal Procedure "[n]o party may assign as error the giving or the refusal to give an instruction ... unless he objects thereto before the arguments to the jury are begun, stating distinctly the matter to which he objects and the grounds of his objection." This Court has recognized that the objections must be distinct and specific about their grounds or they are not reviewable. *State v. Cooper*, 172 W.Va. 266, 304 S.E.2d 851 (1983); *State v. Bush*, 163 W.Va. 168, 255 S.E.2d 539 (1979). As stated in syllabus point 3 of *State v. Gangwer*, 169 W.Va. 177, 286 S.E.2d 389 (1982):

The general rule is that a party may not assign as error the giving of an instruction unless he objects, stating distinctly the matters to which he objects and the grounds of his objection.

The Court believes that, in view of the failure of the defendant to object specifically to State's Instruction No. 5, the defendant's challenge to it on appeal is without merit.

■ Additionally, in conjunction with the instruction, the Court notes that the evidence adduced during trial showed that the defendant had been drinking on November 14, 1987, prior to the killing of Wayne Johnson, and the defendant suggested that he had blacked out momentarily during the scuffle and thus could not have the requisite culpability for the higher forms of homicide. Although he attributed the black-out to a head injury, the question

of his degree of intoxication was at least indirectly before the jury, and a weapon clearly was involved in the killing. Given this evidentiary background, it was appropriate for the trial court to instruct the jury in some manner on the effect of intoxication on legal culpability.

For the reasons stated, the judgment of the Circuit Court of Wyoming County is affirmed.

Affirmed.