438 S.E.2d 881

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Joseph J. WILLIAMS, Defendant Below, Appellant.**

**No. 21565.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 21, 1993.

Decided Dec. 16, 1993.

---

Frank W. Helvey, Jr., Charleston, for appellant.

Darrell V. McGraw, Jr., Atty. Gen. and Jacquelyn I. Custer, Asst. Atty. Gen., Charleston, for appellee.

PER CURIAM:

This case is before this Court upon an appeal from the September 20, 1991, order of the Circuit Court of Berkeley County, West Virginia. The appellant, Joseph J. Williams, was found guilty by a jury of four counts of breaking and entering. On October 28, 1991, the circuit court committed the appellant to the custody of the Department of Corrections for assignment to the Anthony Center, a center for youth offenders, for a period not to exceed two years. On appeal, the appellant asks that this Court reverse the order of the circuit court. This Court has before it the briefs of counsel and all matters of record. For the reasons stated below, the judgment of the circuit court is affirmed.

I

During the fall and winter of 1990, it is alleged that the appellant and his brother broke into and burglarized four buildings in Berkeley County which included a vo-tech center, a middle school, a flea market and a karate club. Two warrants were issued for the appellant's arrest; one warrant charged the appellant with the breaking and entering of the middle school and the second warrant charged the appellant with breaking and entering the flea market. The appellant was arrested on January 7, 1991, by a Morgan County Deputy Sheriff upon two Berkeley County warrants.[1] Two Berkeley County Deputy Sheriffs were also present at the time of the appellant's arrest.

The appellant was then taken to the Morgan County magistrate for arraignment. While the officers and the appellant were waiting for the magistrate to arrive, the appellant was advised of his constitutional rights and he signed a waiver of those rights. Following his signing of the waiver, the appellant made a statement wherein he admitted only to being involved in the breaking and entering of the middle school. His statement was recorded in writing by Berkeley County Deputy Sheriff Shackelford.

On January 8, 1991, arrest warrants were obtained by the Martinsburg Police Department charging the appellant with breaking and entering a bakery thrift shop[2] and the karate club. The appellant denied any participation in the crimes in a tape-recorded statement he gave to the Martinsburg City Police on January 11, 1991.

On January 9, 1991, Deputy Shackelford testified that he received a message that the appellant wanted to speak with the police. The appellant denied the fact that he wanted the police to come and talk with him regarding his case; rather, he claimed that he was calling the police to give them information on a break-in of a local church. Regardless, the appellant was advised of his rights, he signed a waiver and he gave a statement which again was reduced to writing by Deputy Shackelford. In this statement, the appellant admitted to being involved in the breaking and entering of the middle school, the flea market and the vo-tech school, even though he had yet to be charged with that crime. The appellant signed the statement.[3]

---

1. The appellant resided in Morgan County with his mother.

2. We note that the State elected to *nolle prosequi* the count of breaking and entering the bakery thrift shop.

3. In an eight-count indictment, returned on May 21, 1991, a Berkeley County grand jury charged the appellant with, among other things, breaking and entering the middle school, the vo-tech center, the flea market and the karate club.

The question regarding the admissibility of this statement was addressed by the trial court on September 18, 1991, in a suppression hearing. The appellant testified that he was coerced and threatened into giving his January 9, 1991, statement. The appellant alleged that Deputy Shackelford threatened his mother and girlfriend, and he was coerced by the deputy who kept coaxing him with accusatory statements. The State maintained that the statement was voluntary.

The trial court, in ascertaining the admissibility of the appellant's statement, determined that the appellant initiated the conversation and the subsequent statement made by the appellant was freely and voluntarily made upon a knowing execution of a waiver of his Fifth and Sixth Amendment privileges. The statement was ruled admissible.

On September 20, 1991, a jury found the appellant guilty of four counts of breaking and entering the middle school, the vo-tech center, the flea market and the karate club. On that same day, the circuit court entered an order on the conviction, from which the appellant now appeals.

## II

The appellant raises three issues on appeal: (1) The appellant's January 9, 1991, statement given to the police was improperly admitted into evidence in that it was taken in violation of his constitutional right against self-incrimination and his right to counsel; (2) The evidence was insufficient as a matter of law to sustain the appellant's conviction of breaking and entering into the karate club; (3) The Due Process Clause of the West Virginia Constitution was violated when the police failed to electronically tape record the dialogue which took place during the custodial interrogation of the appellant.

The appellant's first contention is that his constitutional right against self-incrimination was violated when the trial court improperly admitted the January 9, 1991, statement given by the appellant to the police. The appellant argues that, when he told the magistrate at his initial arraignment on January 7, 1991, that he would arrange for counsel and he would later advise the court as to who that would be, that communication was the equivalent to a request for an attorney. The appellant asserts that his subsequent statement of January 9, 1991, was a result of a police interrogation and violative of his constitutional rights.

The State does not refute the proposition that it is improper for the police to initiate any communication with the accused who is represented by counsel. The State, however, argues that this proposition is inapplicable to the case herein because it was the appellant who initiated the conversation with the police.

In syllabus point 1 of *State v. Crouch,* 178 W.Va. 221, 358 S.E.2d 782 (1987), this Court set forth a two-part test for determining whether or not a recantation of a request for counsel was effective: "For a recantation of a request for counsel to be effective: (1) the accused must initiate a conversation; and (2) must knowingly and intelligently, under the totality of the circumstances, waive his right to counsel."

In this case, the appellant admitted that he wanted to talk to law enforcement authorities. The appellant asserts, however, that he wanted to talk with the sheriff regarding information he had on another crime that he read about in the "crime solver" section of the local newspaper. Deputy Shackelford testified that he was told by Deputy LeMaster that the appellant wanted to talk with them, and the two deputies subsequently went to see the appellant at the regional jail. As further attested to by Deputy Shackelford, the appellant then advised them that he wanted to make a statement because a co-defendant had made a statement and he wanted to be truthful as well. Deputy Shackelford further testified that the appellant was made aware of and he fully understood his rights, including his right to have an attorney present; and yet, after indicating he understood his rights, he signed a form waiving those rights prior to making the January 9, 1991, statement.

Clearly, this evidence demonstrates the appellant's initiative and willingness to have a discussion with the deputies absent the presence of counsel. The record is void of any

evidence which would allude to the fact that the appellant's waiver of counsel was anything but a knowing and intelligent waiver.

■ In *State v. Vance*, 162 W.Va. 467, 250 S.E.2d 146 (1978), we addressed the purview of the trial court and the weight to be accorded to a trial court's decision regarding the voluntariness of a confession. In syllabus point 2 of *Vance*, we held, "It is a well-established rule of appellate review in this state that a trial court has wide discretion in regard to the admissibility of confessions and ordinarily this discretion will not be disturbed on review." We further held in syllabus point 3 of *Vance* that, "A trial court's decision regarding the voluntariness of a confession will not be disturbed unless it is plainly wrong or clearly against the weight of the evidence."

After a thorough review of the record and the applicable law, we are of the opinion that the trial court did not abuse its discretion in admitting the January 9, 1991, statement of the appellant in that the statement was freely and voluntarily made upon a knowing execution of a waiver of his Fifth and Sixth Amendment privileges.

■ The appellant's second point of contention is that the evidence was insufficient as a matter of law to sustain the appellant's conviction of breaking and entering into the karate club. The appellant argues that the State produced no evidence that Williams participated or conspired with the co-defendant, Daniel Clark, in the initial breaking and entering of the karate club building.

■ The State rebuts the appellant's contention by arguing that the appellant's conviction for breaking and entering the karate club is supported pursuant to the "concerted action" principle. This Court discussed the "concerted action" principle in *State v. Fortner*, 182 W.Va. 345, 387 S.E.2d 812 (1989), and we held in syllabus point 11 of that case that: "Under the concerted action principle, a defendant who is present at the scene of a crime and, by acting with another, contributes to the criminal act, is criminally liable for such offense as if he were the sole perpetrator."

Co-defendant, Daniel Clark, testified that he had been responsible for the initial breaking of the karate club. The evidence shows, however, that shortly thereafter the appellant entered the karate club and participated in stealing property from within the club. As the State points out, the trial court properly instructed the jury on the breaking and entering charge and the "concerted action" principle.

■ In syllabus point 1 of *State v. Starkey*, 161 W.Va. 517, 244 S.E.2d 219 (1978), this Court established a standard of review to be utilized when reviewing a guilty verdict:

In a criminal case, a verdict of guilt will not be set aside on the ground that it is contrary to the evidence, where the state's evidence is sufficient to convince impartial minds of the guilt of the defendant beyond a reasonable doubt. The evidence is to be viewed in the light most favorable to the prosecution. To warrant interference with a verdict of guilt on the ground of insufficiency of evidence, the court must be convinced that the evidence was manifestly inadequate and that consequent injustice has been done.

Therefore, when we apply this standard to the facts herein we are of the opinion that the there was sufficient evidence to support the jury's verdict of guilt, and thus the verdict is affirmed.

■ The appellant's final point of contention is that the Due Process Clause, article 3, § 10 of the West Virginia Constitution, was violated when the police failed to tape record the dialogue which took place during the custodial interrogation of the appellant.

■ We have addressed the merits, or lack thereof, of the electronic recordation system in *State v. Nicholson*, 174 W.Va. 573, 328 S.E.2d 180 (1985). We stated, in *Nicholson*, that to impose the requirement that an interrogating officer must officially record the suspect's statement would be logistically impractical, and unnecessary given the other protections afforded to suspects by our system and it would conflict with well established precedent. Accordingly, this Court held in syllabus 2 of *Nicholson*: "A confession or statement made by a suspect is admissible if it is freely and voluntarily made despite the fact that it is written by an arresting officer if the confession or state-

ment is read, translated (if necessary), signed by the accused and admitted by him to be correct."

Moreover, this Court recently had occasion to readdress *Nicholson* in *State v. Kilmer,* 190 W.Va. 612, 439 S.E.2d 881 (1993). We stated in syllabus point 10 of *Kilmer:* "Based on our decision in *State v. Nicholson,* 174 W.Va. 573, 328 S.E.2d 180 (1985), we decline to expand the Due Process Clause of the West Virginia Constitution, Article III, § 10, to encompass a duty that police electronically record the custodial interrogation of an accused."

*Nicholson* and *Kilmer* are directly on point in this case. The appellant initiated the conversation with the police, Deputy Shackelford took the statement in longhand and the appellant signed the statement. Deputy Shackelford had no duty to electronically record the appellant's statement in light of *Nicholson* and *Kilmer.* Thus, there was no violation of the appellant's due process rights.

Based upon the foregoing, the judgment of the Circuit Court of Berkeley County is affirmed.

Affirmed.